IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Barry M. Keels, | Civil Action No. 3:20-cv-698-CMC-SVH |
| Plaintiff, | |
| vs. | **OPINION AND ORDER** |
| Continental Tire Sumter, LLC, and Continental Tire the Americas, LLC, | |
| Defendants. | |

In this case removed from South Carolina state court on February 11, 2020, plaintiff Barry M. Keels ("Keels") sues his former employers Continental Tire Sumter, LLC and Continental Tire the Americas, LLC (collectively "Continental"), alleging, *inter alia*, he suffered discrimination in his employment because of his African-American race, the improper withholding of wages, and retaliation for reporting these matters to his superiors.[1] ECF Nos. 1, 20. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(g), D.S.C., this case was referred to United States Magistrate Judge Shiva V. Hodges for all pretrial proceedings. On November 22, 2021, Keels filed an amended complaint ("Amended Complaint") to add three causes of action. ECF No. 20. One month later, Continental filed the instant motion seeking dismissal of two of eight causes of action for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). ECF Nos. 20, 24. In particular, Continental seeks to dismiss Keels' third cause of action alleging conversion under South Carolina common

---

[1] As the Magistrate Judge correctly observed, Continental asserts Continental Tire Sumter, LLC is improperly named as a defendant in this action but Continental has not requested nor made a motion the court dismiss this entity as a party. ECF No. 24 at 1 n.1.

law and his fifth cause of action alleging retaliatory discharge in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 215(a)(3), 216(b).

On March 11, 2022, the Magistrate Judge issued a Report and Recommendation ("the Report"), recommending the court grant Continental's partial Rule 12(b)(6) motion *in toto*. ECF No. 33. Keels filed two objections to the Report, ECF No. 38, and Continental filed a reply, ECF No. 39. The case is presently before the court to consider the Report, Keels' objections, and Continental's reply in resolving Continental's partial Rule 12(b)(6) motion.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge in the Report or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

## I. The Amended Complaint.

As relevant to the instant partial Rule 12(b)(6) motion, Keels alleges the following in the Amended Complaint. He began his employment with Continental on September 28, 2015, for an indefinite term. ECF No. 20 at 2 ¶ 6. He performed his work efficiently, effectively, and at an above-standard level. *Id.* ¶ 7. From the start of his employment, he was "subjected to severe and pervasive racial discrimination including frequent racially biased statements," such as when "Jessie (*Lead Tech of Preventative Maintenance*) told [him] that he 'did not want to work with a black man' and that 'black guys were not wanted in the apprenticeship program.'" *Id.* ¶ 8. Keels

2

was told to quit, falsely accused of poor work performance, and constantly harassed due to his race. *Id.* ¶ 9. He immediately and consistently reported the racial harassment he suffered to Continental management, including reporting "the racial discrimination to Robert Turner (*Maintenance Manager*) who transferred him away from some of those employees engaged in the severe and pervasive racial discrimination; however, the racial discrimination continued." *Id.* ¶ 10.

On or about January 12, 2018, Keels entered into an employment contract with Continental providing he would receive wage increases as he completed progressive levels of job training in Continental's Maintenance Apprentice Program. *Id.* ¶ 12. Although Keels completed his training as agreed in the contract, *id.* ¶ 13, Continental "wrongfully" and "without any justification," withheld the wage increases due him as he completed the various training levels, *id.* ¶ 14. On numerous occasions, Keels complained to Continental management about his failure to receive the agreed-upon wage increases and continued to complain about the on-going racial discrimination and harassment he suffered until Continental terminated him on August 30, 2019. *Id.* ¶¶ 11, 14–16. During the entirety of the time Continental employed Keels, Continental "took no corrective action measures to eliminate the discrimination and prevent the harassment from continuing . . . ." *Id.* ¶ 11. Continental terminated Keels because of his race (African-American) and because of his repeated complaints to Continental management about his being underpaid in violation of their contract and about the continued race discrimination. *Id.* ¶ 16. Keels alleges Continental would not have terminated his employment but for his race, his complaints of race discrimination to

3

Continental management, and his complaints regarding the insufficiency of his wage payments to Continental management.  *Id.* at 3 ¶ 17–19.

In the Amended Complaint, Keels alleges the following eight causes of action:   (1) violation of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to -110; (2) breach of contract under South Carolina common law; (3) conversion under South Carolina common law; (4) unjust enrichment under South Carolina common law; (5) retaliatory discharge in violation of the FLSA; (6) disparate treatment based on his African-American race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2(a)(1); (7) maintaining a hostile work environment based on his African-American race in violation Title VII, *id.*; and (8) retaliation in violation of Title VII, *id.* § 2000e–3(a).  ECF 20 at 3–7 ¶¶ 20 –64.

## II. Standard on a Rule 12(b)(6) Motion to Dismiss.

To be legally sufficient, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In the context of surviving a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, this standard requires the complaint to contain sufficient factual matter, accepted as true, to state a claim plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *see also McCleary-Evans v. Maryland Dept. of Trans.*, 780 F.3d 582, 587 (4th Cir. 2015) (noting "*Iqbal* and *Twombly* articulated a new requirement that a complaint must allege a plausible claim for relief, thus rejecting a standard that would allow a complaint to survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of [undisclosed] facts to support recovery." (emphasis and alteration in

4

original, internal quotation marks omitted)); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (plaintiff need not forecast evidence sufficient to prove elements of a claim but must allege sufficient facts to establish those elements). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the court must accept as true all factual allegations contained in the complaint, *Twombly*, 550 U.S. at 555–556, and draw all reasonable inferences from those facts in favor of the plaintiff, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011), the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papason v. Allain*, 478 U.S. 265, 286 (1986) (cited favorably in *Twombly*, 550 U.S. at 555).

## III. Analysis.

### A. Conversion.

Under South Carolina common law, the tort of "[c]onversion is defined as the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." *Moore v. Weinberg*, 681 S.E.2d 875, 878 (S.C. 2009). Moreover, "[m]oney may be the subject of conversion when it is capable of being identified and there may be conversion of determinate sums even though the specific coins and bills are not identified." *Id.*

In the Amended Complaint, Keels alleges conversion as his third cause of action in paragraphs thirty through thirty-five. ECF No. 20 at 4. In paragraph thirty, he realleges and incorporates by reference, the allegations contained in paragraphs one through twenty-nine "as if

5

fully set forth herein." *Id.* Accepting as true all factual allegations set forth in paragraphs one through thirty-five of the Amended Complaint and drawing all reasonable inferences in Keels' favor, Keels' claim for conversion alleges he and Continental entered into a contract on January 12, 2018, whereby Continental agreed to increase his pay to between $12.00 and $17.00 per hour as Keels completed progressive levels of Continental's Maintenance Apprentice Program, and despite Keels having completed all progressive levels, Continental maliciously, knowingly, and in bad faith permanently withheld the additional wages it had agreed to pay him under the contract. *Id.* at 1–4.

Continental moved to dismiss Keels' conversion claim for failure to state a claim upon which relief can be granted on the ground "South Carolina law does not permit a plaintiff to maintain a claim for conversion based on unpaid wages." ECF No. 24-1 at 4. In response, Keels acknowledges a mere contractual dispute over unpaid wages will not support a claim for conversion under South Carolina common law. ECF No. 28 at 2. However, Keels argues, the Amended Complaint states a viable claim for conversion under South Carolina common law because it "specifically identifies that the insufficiency in the wages he is owed is due directly from not only a contractual agreement, but a far more onerous and oppressive reason: racial discrimination." *Id.* at 3. In support, Keels points to the following allegation in paragraph forty-eight of the Amended Complaint: "Defendants were wanton and intentional in the discrimination of the Plaintiff in the following particulars, to wit: a. In failing to pay the plaintiff similar amounts of wages as compared to similarly situated non-African-American employees[.]" ECF No. 20 at 5 ¶ 48. As for case law support, Keels relies upon *Owens v. Zippy Mart of S.C. Inc.*, 234 S.E.2d

6

217, 218 (S.C. 1977) ("*Zippy*"), in which the Supreme Court of South Carolina distinguishes an action for services rendered which ordinarily sounds in contract rather than tort, from an action "predicated on conduct more onerous than a simple breach of contract." *Id.* Keels argues Continental's withholding of his earned wages because of his race constitutes onerous and oppressive conduct, and thus, sounds in tort rather than contract.

In *Zippy*, the plaintiff asserted a claim for conversion under South Carolina common law against her employer based upon the employer's withholding of her earned wages totaling $425.60. *Id.* The employer defended on the ground, pursuant to a management contract between the parties, it rightfully withheld the $425.60 as a set-off against money for which the plaintiff had failed to properly account as part of her employment. *Id.* Following a trial, the jury returned a judgment in favor of the plaintiff for $425.60 in actual damages and $5,000 in punitive damages. *Id.* The employer appealed, and the South Carolina Supreme Court reversed on the basis the plaintiff had "failed to prove any act of conversion . . . ." *Id.* In its analysis, the *Zippy* court distinguished *Owens v. Andrews Bank & Trust Co.*, 220 S.E.2d 116 (S.C. 1975), relied upon by the plaintiff in *Zippy*, on the basis *Owens* involved a fact situation marked by oppressive conduct on the part of the withholding party. *Zippy*, 234 S.E.2d at 218.

In *Owens*, the plaintiff was the sole owner of a Christmas Club bank account wherein she had deposited a total of $879.00 over the course of months. 220 S.E.2d at 117–18. Pursuant to the terms of the Christmas Club, in mid-November 1973, the defendant bank ("the Bank") closed the accounts of its Christmas Club depositors, prepared checks payable to each depositor equal to his or her funds on deposit, and then mailed the checks to the appropriate local bank branches for

7

delivery to the appropriate Christmas Club depositor. *Id.* at 117. Instead of delivering plaintiff her check, the manager of plaintiff's local branch withheld it to coerce plaintiff's husband to make good on his obligations to the Bank under certain financing arrangements. *Id.* Plaintiff sued the Bank, alleging conversion of her Christmas Club account, "by willfully and knowingly refusing to pay her the funds after repeated demands, and using the funds for its own benefit." *Id.* at 118. The trial court directed a verdict in favor of plaintiff for actual damages based on conversion, which the Bank challenged on appeal. *Id.* at 119. In rejecting the Bank's appellate challenge, the *Owens* court determined a conversion claim was viable on the facts before it because the situation was "much more onerous than a simple breach of contract." *Id.* The court emphasized the branch manager's "withholding delivery of plaintiff's check and using this check to pressure her husband, constituted a wrongful and illegal misuse of plaintiff's funds and amounted to a misappropriation of the same to the Bank's own use and benefit." *Id.* at 119–20. Furthermore, the court rejected the Bank's argument plaintiff's funds could not be converted because they had been comingled with other funds on deposit, especially when the Bank "itself [had] specifically identified and designated the sums belonging to plaintiff by issuing its check No. 29916, drawn and made payable to plaintiff in the amount of $879.00." *Id.* at 120. "The Bank's refusal to deliver the check, which represented plaintiff's funds, upon demand, and its use of the check for its own wrongful and illegal purpose to the plaintiff's detriment," the *Owens* court held, "constituted the tort complained of." *Id.* On this basis, the *Owens* court ultimately concluded the Bank was "liable for the misappropriation and conversion of plaintiff's funds by its agent [the branch manager], and there was no error by the trial court in directing a verdict for the plaintiff based on the evidence." *Id.*

8

In Continental's Reply to Keels' Response, it contends "no court interpreting South Carolina law has recognized a conversion claim for unpaid wages" withheld on account of the employee's race. ECF No. 29 at 2. Continental further contends in *Flowers v. Premier V.T.L., LLC,* Civil Action No. 2:18-1279-RMG, 2018 WL 3014820 (D.S.C. June 15, 2018), this court has already expressly rejected a proposed expansion of conversion under South Carolina common law as argued by Keels. ECF No. 29 at 2. In *Flowers*, the plaintiff had alleged a claim of conversion under South Carolina common law against his employer for unpaid wages plaintiff alleged the employer withheld in retaliation for previously seeking unpaid wages. *Flowers*, 2018 WL 3014820, at *2. Continental then argues, even assuming *arguendo* Keels' "novel theory that unpaid wages 'plus' race discrimination amounted to a cognizable claim for conversion under South Carolina law, . . . [Keels] has not pleaded facts to support such a claim in his Amended Complaint, . . . as he makes no mention of race or discrimination in support of his conversion claim." *Id.* at 2 (citing ¶¶ 30–35 of the Amended Complaint). Continental then points out Keels' allegation in paragraph forty-eight of the Amended Complaint that Continental "failed 'to pay [him] similar amounts of wages as compared to similarly situated non-African-American employees,' relate[s] only to his newly-added Title VII claims." *Id.* (quoting ¶ 48 of the Amended Complaint).

For two reasons, the Report recommends the court grant Continental's motion to dismiss Keels' conversion claim. The first reason is because Keels failed to allege affirmative misconduct in Continental's failure to pay him a debt. ECF No. 33 at 6. The Report rejected Keels' reliance on paragraph forty-eight to supply such affirmative misconduct as the paragraph appears after

9

Keels' conversion claim (*i.e.*, the third cause of action) under his Title VII disparate treatment claim (*i.e.*, the sixth cause of action) and Keels makes no mention of racial discrimination in the allegations pertaining to his conversion claim. *Id.* (citing ¶¶ 33—35 of the Complaint). The second reason is Keels "cites no case law in support of his position that unpaid wages plus racial discrimination amounts to a cognizable claim for conversion under South Carolina law." *Id.* In support, the Report cites *Flowers* with the following parenthetical "(dismissing conversion claim and rejecting argument that unpaid wages plus termination in retaliation for seeking unpaid wages supported a claim for conversion under South Carolina law)." *Id.* at 7.

In Keels' Objection to the Report's recommended dismissal of his claim for conversion under South Carolina common law, Keels distinguishes *Flowers* on the basis the opinion in *Flowers* "does not relate to or refer to onerous or oppressive conduct predicating the motivation behind withholding wages and does not involve racial discrimination." ECF No. 38 at 2. Keels goes on to argue:

> Contrarily, here, the complaint unambiguously alleges that [Continental's] motivation behind the withheld wages was racial discrimination; while the Report references a lack of authority on the subject, a difficulty arises in attempting to contemplate more "oppressive and onerous" behavior than using a person's race to justify withholding their wages. Although the Report peripherally mentions that the above referenced wage-related race discrimination claim is identified in the Title VII Cause of Action header, the explicit allegation is nevertheless within the four walls of the complaint; however, if the court finds the placement of the claim insufficient, fatal, and subject to dismissal, [Keels] respectfully requests the opportunity to include the allegation in both sections.

*Id.* at 2–3.

10

In Continental's Response to Keels' Objection to the Report's recommendation to dismiss his conversion claim, Continental contends, in relevant part: (1) Keels "cites no authority for his contention that a claim for unpaid wages 'plus racial discrimination' amounts to a cognizable claim for conversion, nor could he," ECF No. 39 at 4; (2) the Report correctly concluded "this [c]ourt already rejected [Keels'] 'unpaid wages *plus* onerous employment conduct' theory in *Flowers*," *id.*; and (3) in the Amended Complaint, Keels fails to tie his allegations of unpaid wages in his conversion claim to any allegations of racial discrimination, *id.* at 5.

Having carefully considered the parties' arguments and the Report regarding Keels' conversion claim under South Carolina common law, the court agrees with the Report's recommendation to grant Continental's motion to dismiss Keels' conversion claim for failure to state a claim upon which relief can be granted. First, the court is skeptical the Amended Complaint is properly read as alleging in the third cause of action Continental withheld Keels' unpaid wages because of his race. To do so requires piecing together an allegation in the sixth cause of action for disparate treatment in violation of Title VII (in paragraph forty-eight) unconnected in any manner with the third cause of action for conversion under South Carolina common law. Such piecing together is at complete odds with Federal Rule of Civil Procedure 8(a)(2)'s requirement for a claim to be legally sufficient, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Nonetheless, assuming *arguendo* the Amended Complaint is properly read as alleging in the third cause of action Continental withheld Keels' earned wages under the training contract because of his race, the Amended Complaint still fails to state a claim for conversion under South

11

Carolina common law upon which relief can be granted.[2]  This is because the wages due Keels under the training contract Keels alleges Continental withheld because of his race do not constitute the type of money subject to a claim for conversion under South Carolina common law.  The point is made clear in the South Carolina Court of Appeals' decision in *Austin v. Independent Life and Acc. Ins. Co.*, 370 S.E.2d 918, 921–22 (S.C. Ct. App. 1988), in which the court distinguished *Owens* to hold a conversion claim under South Carolina common law cannot be maintained based upon allegations the defendant insurance company, motivated by fraud (*i.e.*, onerous and oppressive conduct), converted her insurance premiums.  In so distinguishing, the *Austin* court reasoned as follows:

> The insurance premiums in this case do not constitute the type of "money" which is subject to conversion.  The premiums are not an identifiable or separate item.  There is no evidence in the record [plaintiff's] premiums were separately maintained by [the defendant insurance company] and not commingled with other premiums.  This case is distinguishable from *Owens* because the money in that case was a specific check.

*Id.*  The *Austin* court also distinguished *Perry v. United Ins. Co. of Am.*, 204 S.E.2d 573 (S.C. 1974), relied upon by the plaintiff in *Austin*, on the ground the item converted in *Perry* was an actual check representing an insurance refund rather than premiums commingled with other premiums held by the defendant insurance company.  *Austin*, 370 S.E.2d at 922.

---

[2] Because Keels' claim for conversion under South Carolina common law fails to state a claim upon which relief can be granted even assuming *arguendo* the Amended Complaint is properly read as alleging in the third cause of action Continental withheld Keels earned but unpaid wages under the training contract because of his race, the court need not and does not address his request in his Objection to the Report to amend the Amended Complaint to reflect the same.  ECF No. 38 at 3.

12

Keels does not allege Continental converted any paycheck it had issued him. Rather, Keels alleges Continental never paid him for wages he earned. The unpaid wages are not an identifiable or separate item. There is no allegation the unpaid wages were separately maintained by Continental and not commingled with other funds held by Continental. In contrast, the funds in the Christmas Club account at issue in *Owens* were not only separately maintained by the bank, they also derived from discrete and identifiable deposits made by the plaintiff. Moreover, unlike the specific check representing the proceeds from the Christmas Club account at issue in *Owens*, Keels has not alleged a possessory interest in a document or monetary instrument representing his unpaid wages due under the training contract, and thus he has not stated a claim for conversion under South Carolina common law. Analogous case law from other jurisdictions is in accord with the conclusion reached by the court. *See Voris v. Lampert*, 446 P.3d 284 (C.A. 2019) (holding plaintiff failed to state claims for conversion against his three employers under California common law because to do so would require the court to indulge a fiction; namely plaintiff provided promised services to his employers, certain identifiable monies in his employers' accounts became the plaintiff's personal property, and by failing to turn them over at the agreed-upon time, plaintiff's employers converted plaintiff's property to their own use); *Patel v. Shah*, 295 So.3d 659 (Ala. 2019) (conversion claim based on defendant's alleged retention of plaintiff's share of business profits not viable because money at issue was neither specific nor capable of identification); *Soviero v. Carroll Group Intern, Inc.*, 813 N.Y.S.2d 49 (N.Y. App. Div. 2006) (terminated real estate agent failed to state cause of action against her former employer for conversion of unpaid commission on sale of condominium unit because real estate agent had never

13

exercised ownership, possession, or control of funds in the first place; she had been terminated prior to the actual sale of the condominium); *Hensley v. Poole*, 910 So.2d 96, 101 (Ala. 2005) (holding no cause of action for conversion where plaintiff claimed 30% share of business profits but did not allege or provide evidence indicating "that the money at issue was in any way segregated or identifiable"); *see also* 18 Am. Jur. 2d *Conversion* § 20 (February 2022 Update) ("[F]ailure to pay a sum of money pursuant to a contract, even if wrongful, does not constitute conversion.").

No South Carolina case has permitted recovery for a conversion claim based upon earned but unpaid wages withheld because of the employee's race or for some other onerous or oppressive reason when the earned but unpaid wages had not been separately maintained by the employer but had been commingled with other funds of the employer. Thus, to permit a conversion claim under such allegations would extend South Carolina conversion law beyond its current boundaries. Moreover, because there is no basis for concluding the South Carolina Supreme Court or the South Carolina Court of Appeals would approve such an extension, the court declines to do so, especially in light of analogous case law from other jurisdictions which do not permit recovery under similar circumstances. *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 190 (4th Cir. 2007) (employees alleged conversion claims under North Carolina common law against employer to recover unpaid wages allegedly due for time spent complying with employer's requirement employees change into uniform at start of shift and out of uniform at end of shift; affirming Rule 12(b)(6) dismissal of such claims with prejudice because the Supreme Court of North Carolina had not recognized a cause of action for conversion in employer-employee disputes over unpaid wages and no basis

14

existed for concluding it would if given the opportunity, including any decisions of North Carolina's intermediate appellate court that might be persuasive).

For the reasons stated herein, the court: (1) adopts the Report's conclusion Keels' third cause of action alleging conversion under South Carolina common law fails to state a claim upon which relief can be granted, as supplemented by the court's analysis; and (2) adopts the Report's concomitant recommendation the court grant Continental's motion to dismiss the same.  ECF No. 33 at 7.

**B. FLSA Retaliatory Discharge.**

The court next considers Keels' objection to the Report's recommendation the court grant Continental's motion to dismiss his fifth cause of action alleging Continental violated the FLSA by discharging him in retaliation for his making numerous complaints to Continental "regarding the wages that were withheld from him by" Continental.  ECF No. 20 at 5 (the Amended Complaint).  With exceptions not relevant here, the FLSA sets a minimum-wage for employees at $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), and a maximum workweek of forty hours "unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed," *id.* § 207(a)(1).  The FLSA's antiretaliation provision makes it unlawful for a covered employer to "discharge . . . any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter[.]"  *Id.* § 215(a)(3).  "To fall within the scope of the [FLSA's] antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights

15

protected by the [FLSA] and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 14 (2011). This standard can be met by oral or written intracompany complaints. *Id.* (holding oral or written complaints can meet this standard); *Minor v. Bostwick Laboratories, Inc.*, 669 F.3d 428, 432 (4th Cir. 2012) (holding intracompany complaints can meet this standard). To state a claim for retaliatory discharge under the FLSA, a plaintiff must allege facts sufficient to demonstrate the following elements of a *prima facie* case: (1) the plaintiff engaged in an activity protected by the FLSA; (2) the employer discharged the plaintiff from its employment subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the plaintiff's activity and the employer's discharge. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008).

In the Amended Complaint, Keels alleges retaliatory discharge in violation of the FLSA as his fifth cause of action. ECF No. 20 at 5 ¶¶ 41–44. In paragraph forty-one, he realleges and incorporates by reference, the allegations contained in paragraphs one through forty "as if fully set forth herein verbatim." *Id.* Accepting as true all factual allegations set forth in paragraphs one through forty-four of the Amended Complaint and drawing all reasonable inferences in Keels' favor, Keels' claim for retaliatory discharge in violation of the FLSA alleges: (1) he and Continental entered into a contract on January 12, 2018, whereby Continental agreed to increase his pay to between $12.00 and $17.00 per hour as he completed progressive levels of Continental's Maintenance Apprentice Program; (2) despite his completion of all progressive levels, Continental maliciously, knowingly, and in bad faith permanently withheld the additional wages it had agreed to pay him under such contract; (3) he made numerous complaints to Continental's management

16

regarding such withholding; and (4) Continental discharged him from its employment in retaliation for such complaints. *Id.* at 1–5.

Contending the Amended Complaint fails to allege the first and third elements of a *prima facie* case of retaliatory discharge under the FLSA, Continental moved to dismiss Keels' FLSA retaliatory discharge claim for failure to state a claim upon which relief can be granted. ECF 24-1 at 7. The first element requires Keels allege he engaged in an activity protected by the FLSA, while the third element requires Keels allege a causal connection between his protected activity and Continental's discharge of him from its employment. *Darveau*, 515 F.3d at 340.

In his Response, Keels contends the following allegations in the Amended Complaint combine to sufficiently allege the first element of a *prima facie* case of retaliatory discharge under the FLSA: (1) he "complained on numerous occasions regarding the insufficiency of his wage payments," ECF No. 20 at 2 ¶ 15; (2) he "made numerous complaints to [Continental] regarding the wages that were withheld from him by [Continental]," *id.* at 5 ¶ 42; and (3) "[i]n response – and as a direct retaliatory measure – [Continental] terminated [his] employment in violation of the [FLSA]," *id.* ¶ 43. ECF No. 28 at 4. Keels argues because the Amended Complaint "does not qualify or limit the scope of the term 'wages' in any respect, and [the Amended Complaint], as written, cannot be read or interpreted to limit the term 'wages' to only those earned within or below a 40-hour workweek . . . the [Amended Complaint] is sufficiently pleaded with respect to [him] engaging in a protected activity." *Id.* Keels argues the Amended Complaint satisfies the third element of a *prima facie* case for retaliatory discharge under the FLSA because it alleges: (1) Continental's wage withholding of the increased pay under the terms of the training contract began

17

directly after he completed his training and lasted until his discharge on August 30, 2019, ECF No. 20 at 2 ¶¶ 13–14; (2) his wages were inadequate because of racial discrimination on the part of Continental and its breach of the training contract, *id.* ¶¶ 27, 48; (3) he made complaints of wage insufficiency to Continental on numerous occasions, *id.* at ¶ 42; and (4) in direct response to such complaints, Continental terminated him, *id.* at ¶ 43.  ECF No. 28 at 5.  According to Keels, "after describing in detail the nature of the wages withheld, the numerous attempts to correct the wage insufficiency, and his subsequent retaliatory dismissal – the [Amended Complaint] is well pleaded and [Continentals'] motion" to dismiss his retaliatory discharge claim under the FLSA "should be denied." *Id.*

Continental makes the following arguments in its Reply to Keels' Response:  (1) Keels' allegations of generalized complaints about his wages without any allegations of minimum wage or overtime violations, do not allege protected activity under the FLSA; (2) Keels' allegation he suffered disparate treatment with respect to his wages because of his race in violation of Title VII does "absolutely nothing to further his FLSA retaliation claim," ECF No. 29 at 4; and (3) the remaining allegations upon which Keels relies do not satisfy his pleading burden under *Twombly*, 550 U.S. at 555, because "they lack any specificity, including any particulars regarding the precise nature of his complaints, to whom he complained, when he complained, and who allegedly engaged in the purported retaliatory conduct in violation of the FLSA."  ECF No. 29 at 5.

The Report recommends dismissal of Keels' FLSA retaliatory discharge claim on the dispositive basis the Amended Complaint fails to sufficiently allege the first element of a *prima facie* case.  ECF No. 33 at 8.  Specifically, the Report concludes the Amended Complaint "fail[s]

18

to allege he engaged in activity protected by the FLSA where there is no indication from the complaint that [Continental] did not pay minimum or overtime wages, or that [Keels] complained about such nonpayment, resulting in his termination. *Id.* As failure to allege the first element of a *prima facie* case is dispositive, the Report did not reach the issue of whether the Amended Complaint sufficiently alleged the third element of a *prima facie* case.

In Keels' Objection to the Report's recommended dismissal of his claim for retaliatory discharge under the FLSA, Keels reiterates his earlier arguments the Amended Complaint does not qualify or limit the scope of the term "wages" in any respect, and the Amended Complaint cannot be read to limit the term "wages" to those only earned during a forty-hour workweek. ECF No. 38 at 3. Keels further contingently states "if the court finds that an explicit allegation of overtime wages is necessary to maintain a cause of action for retaliatory discharge under the FLSA, [he] respectfully requests an opportunity to amend the [Amended Complaint] as the current motion represents the first time any deficiencies in the complaint have been alleged." *Id.*

In Continental's Response to Keels' Objection to the Report's recommendation to dismiss his retaliatory discharge claim under the FLSA, Continental reiterates its prior arguments regarding failure of the Amended Complaint to sufficiently allege the first and third elements of a *prima facie* case. ECF No. 39 at 5–6. Additionally, on the following grounds, Continental vehemently opposes granting Keels' request to amend the Amended Complaint to cure his pleading deficiencies. *Id* at 6–8. First, the request is procedurally improper because Federal Rule of Civil Procedure 7(b)(1) requires a request for a court order to be made by motion. ECF No. 39 at 6–7. Second, even construing the request as a valid motion to further amend, the deadline in the

Scheduling Order to amend the pleadings expired on February 22, 2022, and Keels cannot meet

Federal Rule of Civil Procedure 16(b)(4)'s good cause standard required to justify granting leave

to amend after the deadline in the Scheduling Order has passed.  ECF No. 39 at 7.  This is especially

so, Continental argues, because Keels' untimely request to amend falls three months after it filed

its motion to dismiss his retaliatory discharge claim under the FLSA on December 22, 2021,

putting Keels on notice as to the pleading deficiencies in his Amended Complaint. *Id.*  Similarly,

Continental points out Keels failed to request any additional time to amend the Amended

Complaint in the parties' March 15, 2022, Joint Motion to Amend the Scheduling Order, ECF No.

35, which the parties filed after the Magistrate Judge issued the Report on March 11, 2022.  ECF

No. 39 at 7.  According to Continental, "[a]s multiple other courts in this Circuit have held, to

allow [Keels] to amend his [Amended] Complaint at this stage of the proceedings, 'after the

Magistrate Judge has issued a formal recommendation regarding a dispositive motion, would not

only prejudice [Continental], who ha[s] expended the time and expense of fully briefing a motion

to dismiss; it would encourage dilatory practices on the part of plaintiffs in delaying motions to

amend until after they have the benefit of a Magistrate Judge's opinion.'"  *Id.* at 8 (quoting *Outer*

*Banks Beach Club Ass'n, Inc. v. Festiva Resorts Adventure Club Member's Ass'n, Inc.*, Civil No.

1:11cv246, 2012 WL 4321327, at *4 (W.D.N.C. Sept. 20, 2012)).

Having carefully considered the parties' arguments and the Report regarding Keels'

retaliatory discharge claim under the FLSA, the court agrees with the Report's recommendation

to grant Continental's motion to dismiss the claim with prejudice.  The Amended Complaint

patently fails to allege sufficient facts, when accepted as true and drawing all reasonable inferences

20

therefrom in Keels' favor, to allege the first element of a *prima facie* case, and thus the Amended Complaint fails to state a claim for retaliatory discharge under the FLSA plausible on its face. Keels' unsupported assertion otherwise is fanciful.  The Amended Complaint plainly fails to allege Keels engaged in an activity protected by the FLSA.  The only wages at issue in the Amended Complaint pertain to the wages Continental improperly withheld from Keels in the context of contractually required increases in Keels' rate of pay as he completed progressive levels of Continental's Maintenance Apprentice Program.  Every allegation pertaining to Keels' complaints to Continental management of improper wage withholding is made in this context.  Notably, the Amended Complaint is devoid of a single allegation Continental paid Keels less than minimum wage or withheld wages Keels earned by working more than forty hours in a single workweek. Under these circumstances, the Amended Complaint does not contain a short and plain statement of Keels' retaliatory discharge claim under the FLSA showing he is entitled to relief as required by Federal Rule of Civil Procedure 8(a)(2).  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009) ("legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes") (applying *Iqbal).*  Indeed, the Amended Complaint does not allege Keels even once complained to Continental management it failed to pay him minimum wage or earned overtime pay, let alone satisfy the requirement for an employee's complaint to management to be actionable under the FLSA's antiretaliation provision, it must have been sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the FLSA and a call for their protection.  *Kasten,* 563 U.S. at 14.  Without the

21

Amended Complaint sufficiently alleging Keels engaged in protected activity under the FLSA, *a fortiori*, the Amended Complaint fails to sufficiently allege the third element of a *prima facie* case, *i.e.*, a causal connection exists between activity by Keels protected by the FLSA and Continental's discharge of him from its employment. *Darveau*, 515 F.3d at 340. In sum, Keels' claim for retaliatory discharge under the FLSA as set forth in the Amended Complaint fails to state a claim upon which relief can be granted because the Amended Complaint fails to allege sufficient facts to establish the first and third elements of a *prima facie* case for such claim. *Walters*, 684 F.3d at 439 (plaintiff need not forecast evidence sufficient to prove elements of a claim but must allege sufficient facts to establish those elements).

As for Keels' request for the opportunity to amend the Amended Complaint to include allegations sufficient to state a claim for retaliatory discharge under the FLSA, the court denies the request on several grounds. First, Keels' request is procedurally improper because he failed to comply with Federal Rule of Civil Procedure 7(b)(1)'s requirement a request for a court order be made by motion. *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 218 (4th Cir. 2019) (declining to find requests made in opposition memoranda constitute proper motion to amend and reiterating "a district court does not abuse its discretion by declining to grant a request to amend when it is not properly made as a motion"); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (requests for leave to amend complaint raised only in a footnote in response to defendants' motion to dismiss and again in final sentence of plaintiffs' objections to magistrate judge's report and recommendation do not qualify as motions for leave to amend in compliance with Rule 7(b), and thus court did not abuse its discretion by declining to grant a

motion never properly made).  Second, Keels had twenty-one days from the filing of Continental's

Rule 12(b)(6) motion to file an amended complaint as of right in order to address the pleading

deficiencies identified in the motion.  *See* Fed. R. Civ. P. 15(a)(1)(B) (if pleading is one to which

a responsive pleading is required, party may amend pleading as a matter of course within "21 days

after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), . . .

whichever is earlier").[3]  Thus, despite having the unilateral right to do so, Keels failed to amend

the Amended Complaint within the allotted time required.  Having failed to do so, Keels left the

court with no option but to address the motion to dismiss on its merits, including putting the

Magistrate Judge through the task of preparing the Report.  Third and finally, to grant Keels leave

to amend the Amended Complaint in an attempt to fix-up his claim for retaliatory discharge under

the FLSA at this late stage of the litigation on Continental's Rule 12(b)(6) motion would be to

reward Keels' dilatoriness, while depriving Continental of the dismissal it has earned through the

expenditure of its time and resources.

    For the reasons stated herein, the court adopts: (1) the Report's reasoning in concluding

Keels' fifth cause of action alleging retaliatory discharge under the FLSA fails to state a claim

upon which relief can be granted, as supplemented by the court's analysis herein; and (2) the

Report's concomitant recommendation the court grant Continental's motion to dismiss the same

with prejudice.  ECF No. 33 at 7–9.  The court also denies Keels' request to amend his Amended

---

[3] Continental filed its Rule 12(b)(6) motion the same day it filed its Answer to the Amended
Complaint–December 22, 2021.  ECF Nos. 24 (Motion to Dismiss for Failure to State a Claim);
25 (Answer).

Complaint to cure the pleading deficiencies the court has found regarding his claim for retaliatory discharge under the FLSA.

**IV.    Conclusion.**

In conclusion, the court adopts (1) the Report's conclusion Keels' third cause of action alleging conversion under South Carolina common law fails to state a claim upon which relief can be granted, as supplemented by the analysis herein; (2) the Report's concomitant recommendation the court grant Continental's motion to dismiss the same; (3) the Report's analysis in concluding Keels' fifth cause of action alleging retaliatory discharge under the FLSA fails to state a claim upon which relief can be granted, as supplemented by the court's analysis herein; and (4) the Report's concomitant recommendation the court grant Continental's motion to dismiss the same with prejudice.  ECF No. 33 at 7–9.  The court also denies Keels' request to amend his Amended Complaint to cure the pleading deficiencies the court has found regarding his claim for retaliatory discharge under the FLSA.

Accordingly, the court dismisses with prejudice: (1) Keels' third cause of action in the Amended Complaint alleging conversion under South Carolina common law; and (2) his fifth cause action in the Amended Complaint alleging retaliatory discharge under the FLSA.

**IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
May 12, 2022